UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Jeffrey J. Reed,

    Plaintiff,

v.                                              Case No. 06-14233

International Union, United Automobile,     Honorable Sean F. Cox
Aerospace and Agricultural Implement
Workers of America,

    Defendant.
_____/

## OPINION & ORDER

Plaintiff Jeffrey Reed ("Plaintiff" or "Reed") filed suit against Defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("Defendant" or "the Union"). Plaintiff contends that the Union failed to provide a reasonable accommodation for his religious conflict with paying dues to the union, in violation of Title VII of the Civil Rights Act. Discovery has concluded and the parties agree that there are no genuine issues of material fact for trial. The matter is currently before the Court on the parties' cross-motions for Summary Judgment. The parties have fully briefed the issues and the Court heard oral argument on October 4, 2007. For the reasons below, the court shall DENY Plaintiff's Motion for Summary Judgment and shall GRANT Defendant's Cross-Motion for Summary Judgment.

## BACKGROUND

Reed is an hourly employee of AM General Corporation ("AM General"). Defendant is the exclusive bargaining representative for the assembly line employees. Defendant and AM

General Corporation have a collective bargaining agreement ("CBA") that contains a union security provision that requires employees to join the Union or pay non-union member fees to Defendant as a condition of employment.

AM General and Defendant have also entered into an agreement that permits employees who have a sincere religious objection to financially supporting labor organizations to satisfy their financial obligations under the CBA's union security provision by contributing to charity an amount equal to the dues established by the Union Constitution. (Def.'s Statement of Material Facts, and Plaintiff's Response to same, at ¶ 3).

Dues for the Union are two hours straight time pay per month. (*Id*. at ¶ 4). Both members and nonmembers who do not object to the activities for which the Union expends their payments make union security payments to the Union in the amount of two hours straight time pay per month. (*Id*. at ¶ 5).

Reed joined the Union shortly after he was hired by AM General in May, 2002. *(Id*. at ¶ 1). For the first year of his Union membership, Reed paid his full dues to the Union.

In May, 2003, Reed requested to be treated as an objecting member and his request was granted. (*Id*. at ¶8).

As a result of *Communications Workers of America v. Beck*, 487 U.S. 735 (1988), the Union's Constitution has a provision which permits nonmembers to object to the Union's expenditure of their dues for purposes primarily political in nature and to receive a rebate of the amount of their dues so expended ("*Beck* objectors"). (*Id*. at ¶¶ 6 & 7).

In October, 2004, Reed notified the Union that he was terminating his membership. After that time, the Union treated Reed as a *Beck* objector and his union security payments were

reduced to 78.29% of what Union members and non-objecting nonmembers paid. (*Id*. at ¶¶ 14 & 15).[1]

In a letter to the Union dated February 10, 2005, Reed stated that he is a religious objector, and requested that he be permitted to direct his *Beck* union security payment to a charity, the Disabled Veterans of America, rather than to the Union. (*Id*. at ¶ 16). The Union then requested additional information from Reed. By letter of November 10, 2005, the Union advised Reed that his application to be treated as a religious objector was being granted retroactive to February 2005, when he first applied. (*Id*. at ¶ 28).

Reed requested that he be permitted to pay to the Disabled American Veterans an amount equal to the amount paid to the Union by non-member *Beck* objectors. (Compl. & Ans. at ¶ 13). That request was not granted. Rather, the Union provided Reed with a worksheet showing that his union security obligations as a religious objector under the Letter Agreement would be $439.44 for the period from February through November, 2005. (*Id*. at ¶ 29). That $439.44 represents the same amount that Reed would have paid to the Union as a non-objecting member. As a *Beck* objector he paid only $339.62 for that same period. (*Id*.).

The Union advised Reed that if he made a contribution in the amount of $439.44 to a charity he selected from those listed in the Letter Agreement, the Union would refund the $339.62 he had paid as a *Beck* objector. (*Id*. at ¶ 30). Reed made the payment to a charity he

---

[1]Each year, the Union prepares a report that provides notice of the percentage of Union expenditures that are expended for purposes related and not related to representation and collective bargaining. (*Id*. at ¶ 11). The two hours pay per month union security payments of *Beck* Objectors are then reduced by the non-representational expenditure percentage established in that report. (*Id*. at ¶12). For the 12 months beginning August 2004, *Beck* objectors paid 78.29% of two hours straight time pay as their union security obligation. (*Id*. at ¶13).

selected and the Union refunded him the amount he had previously paid as a *Beck* objector. (*Id*. at ¶ 31). Since November, 2005, Reed has made no payments to the Union, but rather, has been making payments to the charity he selected. (*Id*. at ¶ 33). Reed pays the same amount to the charity that he would have paid as a non-objecting member of the Union.

Reed then filed a complaint with the Equal Employment Opportunity Commission ("the EEOC"). After an investigation, the EEOC concluded that there is reasonable cause to believe that a violation of Title VII has occurred and issued a right to sue letter. The EEOC concluded that Defendant "refused to make a non-discriminatory reasonable accommodation to his sincerely held religious beliefs." (*See* Ex. G to Pl.'s Br.).

Reed filed this action against Defendant on September 26, 2006, alleging that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. In this action, Reed seeks a declaration that he has the right to an accommodation of his religious beliefs that allows him to pay only the fees paid by non-members who object for secular reasons (*i.e.,* the *Beck* objector amount) to a mutually agreed upon charity.

## ANALYSIS

In their cross-motions for summary judgment, each party asserts that it is entitled to summary judgment under the undisputed facts of this case.

A.	Plaintiff's Position:

Reed acknowledges that it is a reasonable accommodation to allow him to redirect his compulsory union fees to a mutually agreed charity. Reed's objection is with the *amount* he is required to pay to the charity. Reed seeks a declaration that he has the right to an accommodation of his religious beliefs that allows him to pay only the fees paid by *Beck*

4

objectors (*i.e.*, ~ 78% versus 100% of regular dues).

He contends that by requiring him to pay the full amount of dues to a charity as a religious objector, the Union is requiring him to pay a "premium," "penalty" or "faith tax" as a religious objector that *Beck* objectors, who he claims are "secular," do not pay. At the hearing, however, Reed's counsel conceded that a *Beck* objector may elect that status for either secular or nonsecular reasons.

Reed relies on *O'Brien v. Springfield Education Ass'n*, 319 F.Supp.2d 90, 106-07 (D. Mass 2003), wherein the district court ruled that when a union offered to accommodate a religious objector by requiring a charity-substitution payment equal to dues, the union had made a "per se unreasonable accommodation." Reed acknowledges that there are only two reported decisions on this issue: *O'Brien* and a decision contrary to *O'Brien*, *Madsen v. Associated Chino Teachers*, 317 F.Supp.2d 1175 (C.D. California 2004).

Reed contends that this Court must choose between two paths: 1) the "*Madsen* path," which Reed contends discourages as many employees as possible from taking advantage of the protections of their faith, or 2) the "*O'Brien* path," which Reed contends "encourages the protection of employees' faith, even if there is some (but not much) adverse impact on union treasuries." (Reed's Response Br. at 3).

B.     Defendant's Position:

Defendant contends that Plaintiff's motion must be denied because the substituted charity option that Defendant provided to Reed is a reasonable accommodation of his religious objections under Title VII. Defendant asserts that under *Ansonia,* employers satisfy their accommodation obligation under Title VII by providing any reasonable accommodation and that

they need not provide the specific accommodation requested by the employee. *Ansonia Board of Education v. Philbrook*, 479 U.S. 60 (1986). Defendant therefore contends that the issue is whether the accommodation it provided is reasonable.

Defendant notes that the Letter Agreement between AM General and Defendant that permits religious objectors to make payments to charity in an amount equal to dues is based on Section 19 of the National Labor Relations Act, which provides in pertinent part:

> Any employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion, body, or sect which has historically held conscientious objections to joining or financially supporting labor organizations **shall not be required to join or financially support any labor organization as a condition of employment; except that such employee may be required in a contract between such employees' employer and a labor organization in lieu of periodic dues and initiation fees, to pay sums equal to such dues and initiation fees to a nonreligious, nonlabor organization charitable fund** exempt from taxation under section 501(c)(3) of title 26 of the Internal Revenue Code, chosen by such employee from a list of at least three such funds, designated in such contract or if the contract fails to designate such funds, then to any such fund chosen by the employee. If such employee who holds conscientious objections pursuant to this section requests the labor organization to sue the grievance-arbitration procedure on the employee's behalf, the labor organization is authorized to charge the employee for the reasonable cost of using such procedure.

29 U.S.C. §169 (emphasis added).

Defendant asserts that the legislative history shows that in passing Section 19, Congress intended to provide an arrangement for religious objectors that served as a reasonable accommodation of their beliefs that satisfied the reasonable accommodation requirements of Title VII. (*See* Def.'s Response Br. at 9). Defendant notes that numerous courts have found a substituted charity accommodation to be reasonable.

Defendant notes that while the Sixth Circuit found Section 19 to be unconstitutional,

because it restricted the substituted charity accommodation to employees who "adhere to established and traditional tenets or teachings of a bona fide religion, body, or sect which has historically held conscientious objections to joining or financially supporting labor organizations," the Sixth Circuit has never questioned the legality or reasonableness of the substituted charity accommodation as reasonable:

> Where a collective bargaining agreement includes a union security provision, courts have held that the duty to accommodate is satisfied by allowing an employee to donate an amount **equal to union** dues to a mutually acceptable charity . . . The substituted charity accommodation lets the union enjoy the benefits of a union security provision while permitting employees 'to practice in accordance with their religious convictions.'

*Wilson v. National Labor Relations Board*, 920 F.2d 1282, 1286 (6th Cir. 1990)(emphasis added).

Defendant also relies on *Madsen,* and the reasoning in that opinion, to support its motion for summary judgment.

Defendant further asserts that Reed's argument that he is being forced to pay "more than anyone else" is not supported in fact. Defendant notes that Reed pays the same amount that is paid by 1698 of 1699 of his co-workers. Defendant notes that of the 1700 bargaining unit employees at AM General, only Reed and one other employee elected Beck status, and Reed was the only employee to request treatment as a religious objector. (*See* Def.'s Reply Br.). Reed acknowledged the accuracy of these facts at the October 4, 2007 hearing.

C. <u>The Court Concludes That Defendant Is Entitled to Summary Judgment Because Plaintiff Has Failed To Establish A Prima Facie Case Of Religious Discrimination.</u>

Title VII provides that it is an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment because of such individual's religion. 42 U.S.C. §2000e-2(a). The proscription against religious discrimination applies equally to a labor organization such as Defendant. *See* 42 U.S.C. §2000e-2(c).

A claim for religious discrimination under Title VII can be asserted under several different theories, including disparate treatment and failure to accommodate. Here, Reed relies exclusively on a failure to accommodate theory.

"The analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination." *Virts v. Consolidated Freightways Corp.*, 285 F.3d 508, 516 (6th Cir. 2002). The employee bears the burden of establishing a prima facie case, and sustains that burden by showing that: 1) he holds a sincere religious belief that conflicts with an employment requirement; 2) he has informed his employer of the conflict; and 3) **he was discharged or disciplined for failing to comply with the conflicting requirement**. *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994)(emphasis added); *see also Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 633 (6th Cir. 2003); *Tepper v. Potter*, __F.3d __ (6th Cir. Oct. 15, 2007).

With respect to that third element of a prima facie case, the Sixth Circuit has "consistently held that a prima facie case of religious discrimination requires discharge or discipline for failure to comply with an employment requirement." *Goldmeier,* 337 F.3d at 634-35. In *Goldmeier*, the plaintiffs had not been discharged or disciplined but nevertheless attempted to pursue a religious discrimination claim and urged the court to abandon that requirement. The Sixth Circuit rejected such arguments. *Goldmeier,* 337 F.3d at 637 ("Nevertheless, for a number of reasons, we hold that discharge or discipline remains an element

8

of a prima facie case of religious discrimination in employment.").

Here, Reed is still employed and has been paying an amount equivalent to regular dues to a designated charity. Unlike the plaintiff in *O'Brien*,[2] Reed's counsel acknowledged at the October 4, 2007 hearing that Reed has not been discharged or disciplined for any failure to pay dues.

Reed contends, however, that he is not required to show that he was discharged or disciplined before bringing his religious accommodation claim. At the October 4, 2007 hearing, Reed's counsel acknowledged that he was unaware of any Sixth Circuit authority that would allow him to establish a prima facie face of religious discrimination without establishing that such discipline or discharge had occurred. Counsel asserted that the closest Sixth Circuit case would be *Smith v. Pyro Mining Co.*, 827 F.2d 1081 (6th Cir. 1987). He also noted that the plaintiff in *Ansonia, supra*, had not been disciplined or discharged, yet was able to challenge the reasonableness of the accommodation offered.

The Court finds Reed's reliance on *Smith* and *Ansonia* to be misplaced. In *Smith*, the court stated that:

> The analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination. Such a case is established when an employee shows that: (1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; **and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement.**

*Smith,* 827 F.2d at 1085 (emphasis added). The court concluded that Smith, who was discharged

---

[2]The plaintiff in *O'Brien* was suspended without pay for failing to pay the agency service fee. *O'Brien*, 319 F.Supp.2d at 96.

because of his refusal to work on Sundays, had established a prima facie case. *Id*. at 1086. Only after determining that Smith had established a prima facie case did the analysis proceed to determining whether Smith's employer offered a reasonable accommodation. *Id.* at 1086 ("Having found that Smith established a prima facie case of discrimination, our analysis now shifts to the question of whether [Smith's employer] reasonably accommodated Smith's religious beliefs.")

Contrary to counsel's statements at oral argument, *Ansonia* does not support the proposition that the third element of the prima facie case is unnecessary. In *Ansonia*, the claim was not dismissed in the district court for want of a prima facie case, but rather, the action proceeded to a full trial on the merits. Due to the unique procedural posture of the case upon reaching the Supreme Court, the *Ansonia Court* held that "the issue whether [plaintiff] made out a prima facie case **was no longer relevant**." *Ansonia*, 479 U.S. 60 at 61 (emphasis added). Thus, as the Sixth Circuit noted in *Goldmeier*, the *Ansonia* Court "explicitly declin[ed] to rule on the existence of a prima facie case." *Goldmeier*, 337 F.3d at 637.[3]

The Court concludes that without being able to establish that he has been either discharged or disciplined for failing to comply with the employer's requirements concerning union dues payments, Reed cannot establish a prima facie case of religious discrimination under existing Sixth Circuit precedent. *See Cooper, supra; Goldmeier, supra.* If unable to establish a prima facie case of religious discrimination, Reed's claim fails and the Court need not consider whether Defendant provided a reasonable accommodation. *See Goldmeier*, 337 F.3d at 638.

---

[3]The Court also finds Reed's reliance on *White v. Burlington Northern*, 364 F.3d 789 (6th Cir. 2004), a case wherein the plaintiff had been suspended without pay, misplaced. (*See* Pl.'s Suppl. Br.).

D.  In Addition, Assuming *Arguendo* That Plaintiff Could Establish A Prima Facie Case Of Religious Discrimination, Defendant's Accommodation Was Reasonable .

If Reed could establish a prima facie case of religious discrimination, the next inquiry would be to determine whether Defendant provided a reasonable accommodation for Reed's religious conflict.[4]

"It is well established that under Title VII, a 'reasonable accommodation' of an employee's religion is one that eliminates the conflict between the employment requirements and the employee's religious practices." 45A AM JUR.2D *Job Discrimination* §133. "The focus of the inquiry as to what type of accommodation is 'reasonable' is on whether the accommodation preserves the employee's terms, conditions, and privileges of employment, once the employer has eliminated the religious conflict with the employee's requirements." *Id.*

An employee is entitled only to a reasonable accommodation, not an accommodation of his choosing. *Ansonia Board of Education v. Philbrook,* 479 U.S. 60 (1986). "By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Id.* at 68*; Smith v. Pyro Mining Company*, 827 F.2d 1081, 1085 (6th Cir. 1987). "Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship." *Ansonia*, 479 U.S. at 68-69.

---

[4]In addition, if Defendant's efforts failed to eliminate the employee's religious conflict, then Defendant would have to establish that it is unable to reasonably accommodate the employee's beliefs without incurring "undue hardship." To require the Defendant to bear more than a *de minimis* cost in order to accommodate an employee's religious beliefs is an undue hardship. *Cooper, supra*.

11

"The reasonableness of an employer's attempt at accommodation cannot be determined in a vacuum. Instead, it must be determined on a case-by-case basis; **what may be a reasonable accommodation for one employee may not be reasonable for another**." *Smith*, 827 F.2d at 1085 (emphasis added). Thus, each case involving such a determination will depend upon its own facts and circumstances and comes down to a determination of reasonableness under the unique circumstances of the individual employer-employee relationship. *Id.*

In this case, Reed was originally a member of the Union and paid his full dues to the Union. About a year later, Reed became a *Beck* objector (*i.e.*, he objected only to paying that portion of his Union dues that would be used for the Union's political activity). As a *Beck* objector, Reed paid to the Union only the reduced *Beck* fees which are approximately 78% of the regular dues. Notably, of the 1700 bargaining unit employees at AM General, only Reed and one other employee elected *Beck* objector status.

Later, however, Reed advised Defendant that he objected to paying *any dues* to the Union on the basis of his religious beliefs. As an attempt to accommodate Reed's religious beliefs, Defendant advised Reed that he could make a substitute charity payment, equivalent to the amount of dues paid by 1698 of 1699 of Reed's co-workers.

The accommodation provided by Defendant eliminated the conflict between Defendant's requirement that Reed pay dues to the Union and Reed's personal religious beliefs, which he claims now prevent him from making any payments to the Union. Indeed, Reed's counsel acknowledged at the hearing that the conflict between Defendant's requirement and Reed's religious beliefs is eliminated by the substituted charity payment allowed by Defendant. Nevertheless, Reed claims that the accommodation is not reasonable because it is a

"discriminatory accommodation" in that it requires Reed to pay an amount that is more than "any other objector who objects to paying dues for secular reasons."

In *Cooper*, the Sixth Circuit observed that an accommodation that results in the employee in question losing an employment benefit "enjoyed by all other employees who do not share the same religious conflict," is not reasonable because it is discriminatory. In that case, the plaintiff's religious beliefs did not allow her to work on Saturdays. The employer's proposed accommodation was to allow the employee to use her vacation time to avoid working on Saturdays scheduled for production. The Court found that accommodation was not reasonable because it required the plaintiff to lose an employment benefit, her accrued vacation time, that was enjoyed by all other employees who did not share her religious conflict with working on Saturdays.

Unlike *Cooper*, this is not a situation where the accommodation provided by Defendant forces Reed to lose a benefit "enjoyed by all other employees" without a religious conflict. Indeed, the accommodation provided has Reed paying the very same amount as the overwhelming majority (1698 out of 1699) of his co-workers, who do not have either secular or nonsecular objections to the Union. On the record before this Court, there is only one employee out of the 1700 bargaining unit employees who is a *Beck* objector.[5] Thus, this is not a case where Reed is charged more than "everybody else." The accommodation provided eliminates Reed's religious conflict and does not result in the loss of any employment benefits to Reed.

Moreover, to the extent that Reed complains that the accommodation "discourages" him

---

[5] It is unknown whether that *Beck* objector elected that status based on secular or nonsecular reasons.

from asserting his religious objection to paying dues to the Union because he is now paying a total amount that is higher than the total amount he used to pay as a *Beck* objector, the Court finds that argument without merit. The Union has reasonably accommodated Reed in each of the various positions that he has asserted throughout his employment: 1) dues paying Union member, 2) *Beck* objector, and 3) religious objector. It is not discriminatory to provide different accommodations to employees who assert different objections.

| **Group:** | **Accommodation:** | **Results**: |
|---|---|---|
| Union Member having no objection to paying Union dues for representation or political activity. | No accommodation was necessary, Reed paid his regular dues to the Union. | Union members pay their fair share of representation costs and political activity. |
| *Beck* Objector objecting to paying only that portion of union dues that is used for political activity, but not objecting to paying for cost of representation. | Reed was appropriately treated as Beck objector. Union broke down its costs and as *Beck* Objector Reed paid to the Union only that portion of Union dues that is used for representation (*i.e.*, he did not pay for political activity). | *Beck* Objectors pay for their fair share of representation costs but pay nothing to the Union towards the political activity they object to. |
| Religious Objector objecting to paying union dues for political activity and objecting to paying dues for the cost of representation. | As a religious objector Reed is permitted to pay nothing to Union and, instead, is permitted to donate an amount equal to his normal dues to a charity. | Religious Objectors pay nothing to the Union, although they receive the benefits of representation.<br><br>Religious Objectors also get benefit of being able to support a charity of their choice (from those listed) and perhaps tax deduction for doing so. |

In addition, to the extent that Reed complains that the accommodation discourages him from asserting his religious objection to paying dues to the Union because he is now paying a total amount that is higher than one of his fellow employees, who is a *Beck* objector, that is a disparate treatment argument and Reed has expressly disavowed such a theory. Moreover, even if Reed raised a disparate treatment theory, the Court agrees with the reasoning in *Madsen* that such a claim is without merit under the facts presented here.

# CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED**.

                                         S/Sean F. Cox
                                         Sean F. Cox
                                         United States District Judge

Dated: October 19, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 19, 2007, by electronic and/or ordinary mail.

                                         S/Jennifer Hernandez
                                         Case Manager